## Goodin, Brown & Company v. Skaggs.

(Decided June 12, 1917.)

### Appeal from Hardin Circuit Court.

1. Master and Servant—Personal Injuries—Negligence—Sufficiency of Evidence.—In a servant's action to recover for personal injuries, caused by the servant's being struck by a car which had become detached from a hoisting cable and run down an incline, evidence that cars had become detached from the cable a sufficient number of times prior to the accident to make it reasonably apparent to a person of ordinary prudence that they would become detached and run down the incline, examined, and held to make a question for the jury.

2. Master and Servant—Personal Injuries—Instructions.—The instructions in a servant's action for personal injuries examined, and held not to be in conflict.

3. Master and Servant—Personal Injuries—Instructions—Prejudicial Error.—Since the master's duty to the servant is the same whether the servant is experienced or inexperienced, the jury in a servant's action for personal injuries should not be required, in order to find for the servant, to believe that the master knew, or by the exercise of ordinary care could have known, of the servant's inexperience; but the master cannot complain of the submission of this issue, for a defendant is never prejudiced by an instruction which requires the jury to believe in the existence of a fact not necessary to a recovery.

4. Evidence—Experts—Opinion—Conclusion.—The statement of an expert that a particular appliance was not reasonably safe is not inadmissible on the ground that the statement was a conclusion rather than an opinion.

DALLAM, FARNSLEY & MEANS, H. L. JAMES and L. A. FAUREST for appellant.

HAYNES CARTER, CLAUDE HUDGINS, A. C. POPHAM and S. L. TRUSTY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is a personal injury action in which John Skaggs recovered of defendant, Goodin, Brown & Company, a corporation, a verdict and judgment for $3,300.00. The defendant appeals.

In the spring of 1914, defendant began the operation of a rock crusher in connection with its quarry. The rock was raised and emptied into the hopper of the crusher by means of an incline track, up which the cars were pulled by a wire cable, one end of which was at-

tached to a drum. From the drum the cable passed over
a shive. Upon this end of the cable was a ring, and the
cable was attached to the car by placing this ring over a
hook in the front end of the car. By means of a lever
and a friction pulley, the drum was then made to revolve
and wind up the cable, thus pulling the car up the incline
track. Until the car reached the hopper it traveled up a
fourteen degree incline. The incline then became steeper,
thus elevating the front end of the car. At this point the
tail gate was raised by means of a cross piece and the
rock thus dumped into the hopper. When the car was
emptied the operator reversed his lever and the car was
allowed to run down the track by force of gravity, pull-
ing the cable with it as it went. The speed of the car was
regulated by a brake, which was applied by the lever. At
the foot of the incline was a turntable, and beyond that
point the track extended for some distance into the
quarry. Up to the date of the accident, which occurred
on August 7, 1914, plaintiff had been at work for fifteen
or sixteen days as a laborer in the quarry. On that morn-
ing, Steubing, the foreman, put plaintiff to work shovel-
ing rock from the track at a point beyond the turntable.
While so engaged, with his back to the crusher, a car
from which the rock had been dumped, and which had be-
come detached from the cable immediately after it began
to descend, ran upon plaintiff and severely injured him.
The accident occurred very soon after plaintiff was put
to work and in the presence of the foreman, who was also
at work a few feet away. Plaintiff did not know, nor was
he warned, of the danger. Plaintiff's evidence tended
to show that on several occasions prior to the accident
cars had become detached from the cable and run down
the track, while the evidence for the defendant
was to the effect that, although the car had fallen from the
incline near the turntable on a few occasions, it had never
become detached from the cable. Defendant also proved
that the plans for its plant were drawn by experts, and
that its appliances were such as were generally used in
similar plants and approved by leading manufacturers.

Besides other instructions which are not questioned,
the trial court gave the following instructions:

"1. The evidence shows that the defendant used or-
dinary care in the selection of reasonably safe appliances
for the construction and installation of its crusher, yet
if the jury shall believe from the evidence that in the use
of said appliances at its crusher and prior to the date

of the injury complained of, there had been such failure of said appliances, hook and attachments to remain fastened and hooked together while employed in hoisting said car or cars and stone up and down the incline track, mentioned in the evidence, as to make it reasonably apparent to a person in the exercise of ordinary care, that the car or cars being so drawn up said incline would become detached and run down into the quarry, where plaintiff was working at the time of his injury, and that by reason thereof said appliances and place where the plaintiff Skaggs was so engaged in work, were not reasonably safe and said condition, if any there was, was known to the defendant, or its agents or servants, superior in authority to the plaintiff, or could have been known to it or them by the exercise of ordinary care, and was not known to the plaintiff or was not so obvious that the plaintiff by the exercise of ordinary care in the discharge of his duty should have known of it, and that by reason thereof plaintiff, while using ordinary care for his own safety, was injured by said car coming unhooked and running over and against him, you will find for the plaintiff; but unless you shall so believe from the evidence as above set out, you should find for the defendant.

"2. If the jury shall believe from the evidence that at the time of the injury complained of the plaintiff Skaggs was inexperienced and when directed to work at the place where he was injured the defendant's agent who directed him where to work and superior in authority to him, knew, or by the exercise of ordinary care, could have known, of plaintiff's inexperience, if such there was, and further believe from the evidence that said agent, Steuben, knew, or by the exercise of ordinary care could have known, that said place where plaintiff was so directed to work was dangerous and not reasonably safe, because cars would become unhooked and were reasonably calculated to run down onto said place, if the jury shall believe from the evidence that such conditions did so exist, and the plaintiff did not know of said condition, and could not have known of said danger and condition, if any there was, by the exercise of ordinary care in the performance of his duties and that by reason thereof the car ran over the plaintiff and he was thereby injured without any negligence or default on his part which directly contributed to his injuries, then the law is for the plaintiff and the jury should so find; but unless the jury shall so believe, you should find for the defendant."

Defendant first insists that plaintiff's evidence to the effect that the cars had become detached from the cable a sufficient number of times prior to the accident to make it reasonably apparent to a person of ordinary prudence that they would become detached and run into the quarry, was not sufficient to support the verdict. On this question John Ryan (colored) testified in substance as follows: The appliances frequently became unhooked before John Skaggs was hurt. On one occasion the car got loose and ran back over the turntable and into the ditch. On another occasion the car jumped the track and fell into the hopper. The cable would become detached and fall to one side. On one occasion the cable flew back against the building. The cable became disengaged and the car jumped the track and almost fell on Mr. Goodin the day before the accident. Henry Benningfield testified that before John Skaggs was hurt the cable became loose from the car "as much as twice anyway," and that the car came down the incline and dumped on the table. John Houver testified that he remembered one occasion prior to the injury when the cable became unhooked from the car. On the other hand, Goodin, Brown and Steubing say that the cable had never, to their knowledge or information, become detached from a car before Skaggs was hurt. On one occasion the turntable was not turned right and the car ran upon the ties when it first started up the incline and fell off. At other times the car had gotten off the track near the hopper, but on none of these occasions had the car become detached from the hook, or the car run down the incline. However, Goodin testified that the cable attachments were prepared by him and his men. W. R. Brooks, who operated the turntable, Stanford Auberry and John Auberry, who fed the crusher, and William Hicks, who operated the lever, also say that the ring on the cable had never become detached from the hook on the car before the accident. It further appears from the testimony of William Hicks that the car that injured Skaggs got loose after it was dumped and that the cable flew off. When this occurred he called out, "loose car!" While it may be true that the numerical weight of the testimony is in favor of the defendant, we are not prepared to say that the finding of the jury is flagrantly against the evidence.

It is next argued that instruction No. 2 is erroneous because it nullified the first part of instruction No. 1, which told the jury that defendant had exercised ordi-

nary care in the selection of reasonably safe appliances for the construction and installation of its crusher. While it is true that instruction No. 2 makes no mention of the fact that defendant had performed its duty in this respect, it practically concedes the performance of this duty by making the defendant's negligence depend on defendant's actual or constructive knowledge of the fact that the place where plaintiff was put to work was not reasonably safe because the cars would become unhooked and run down the incline. Hence, when the two instructions are carefully considered, they present no substantial difference, with the exception of the fact that defendant's negligence in instruction No. 2 was made to depend on plaintiff's inexperience and defendant's actual or constructive knowledge thereof. Clearly, defendant's duty to plaintiff was the same whether he was experienced or inexperienced. His lack of experience bore only on the questions of assumed risk and contributory negligence, which were fully covered by other instructions. Under these circumstances, the jury should not have been required, in order to find for plaintiff, to believe that the defendant knew, or by the exercise of ordinary care could have known, of plaintiff's inexperience. However, the defendant cannot complain of the submission of this issue, for a defendant is never prejudiced by an instruction which requires the jury to believe in the existence of a fact not necessary to a recovery.

Lastly, it is contended that the witness Shannon was permitted to state that the appliance in use by the defendant for handling the cars in question was not reasonably safe. In doing this it is argued the witness was permitted to state his conclusions and not his opinion. In answer to this contention it is sufficient to say that the witness was qualified to testify on the subject. He did not attempt to state the cause of the accident, but merely stated that the appliance was not reasonably safe. To say that his answer, under these circumstances, was a conclusion rather than an opinion, is a mere play on words, for after all an opinion, like a conclusion, is simply a deduction from certain facts, and it is immaterial whether the answer of an expert be called one or the other.

Judgment affirmed.